**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SLEP-TONE ENTERTAINMENT CORP., <br> Plaintiff, <br><br> v. <br><br> RYAN BUCKMUELLER et al., <br> Defendants. | Civil Action No.: 11-4636 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by the following defendants: A-List Entertainment, Allstar Spotlight, Ryan Buchmuller,[1] Edgar Music Entertainment, Edgar Montesdeoca,[2] Karaoke Magic LLC,[3] Peter Tsistinas, P.T. Entertainment, Rob Porter Entertainment, and Sights N Sounds Studios LLC[4] (hereafter referred to collectively as "Defendants"). The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendants' motion to dismiss

---

[1] The instant motion clarifies that Mr. Buchmuller was incorrectly identified as "Ryan Buckmueller" in the Complaint. (Def. Mot., 1).

[2] In addition, it is clear from Defendant's brief that the party identified as "Edgar" in the Complaint is in fact Edgar Montesdeoca. (Def. Mot., 1).

[3] Defendant's brief additionally states that "it is believed that the proper name of the entity in question is Karaoke Magic, LLC. and not Jeff Norbs D/B/A J Studios Karaoke Magic. (Def. Mot, 1).

[4] Similarly, Defendant submits that "the proper name of the entity in question is Sights N Sounds Studios, LLC and not David Lamoreant D/B/A Chaos Karaoke and Music." (Def. Mot., 1).

Plaintiff Slep-Tone Entertainment Corporation's (hereafter "Slep-Tone") Complaint is hereby denied.

## I. BACKGROUND

Plaintiff Slep-Tone produces "re-created arrangements of popular songs" for use as karaoke "accompaniment tracks." (Compl. ¶ 33). Accompaniment tracks contain a "graphics" portion which provides "contemporaneous video display of the lyrics to the song, in order to aid the performer," which also display Plaintiff's trademarks. (Id. at ¶¶ 33, 35). Specifically, Slep-Tone alleges that it is the owner of two federally registered trademarks, No. 1,923,448 for the trademark SOUND CHOICE and No. 2,000,725 for a "display trademark." (Id. at ¶¶ 58-59) (hereafter "Sound Choice Marks").

As per the Complaint, in order to produce the karaoke accompaniment tracks at issue, "Slep-Tone and its affiliated companies pay statutory and negotiated royalties to the owners of copyright in the underlying musical works for their activities in legitimately creating, copying, distributing, and selling compact disks containing karaoke accompaniment tracks." (Id. at ¶ 45). Plaintiff further alleges that along with its affiliates, it has "spent millions of dollars building and maintaining studios, hiring artists, building a distribution facility, paying royalties to copyright owners, building a company that is capable of reliably producing high-quality karaoke versions of current and historical musical hits, and building a brand that is one of the pre-emininent [sic] brands in the industry." (Id. at ¶ 46).

Plaintiff "brings this action against a number of 'Karaoke Jockeys' (otherwise known as 'KJs'), who used counterfeit versions of high-quality karaoke accompaniment tracks that Slep-

Tone created at the cost of over $18 million." (Pl. Opp'n., 1). The gravamen of Plaintiff's Complaint is that the alleged "widespread creation of counterfeit copies of Slep-Tone's karaoke disks has denied Slep-Tone the benefit of its investments," and that such counterfeits include registered trademarks, making the counterfeits virtually indistinguishable from Plaintiff's genuine product. (Compl. ¶¶ 47-49). Plaintiff additionally states that neither it "nor any of its associated companies has ever authorized the digitization of its songs for commercial use in producing karaoke shows." (Id. at ¶ 40). However, Plaintiff alleges that "many KJs, such as some of the present Defendants, obtain, copy, share, distribute and/or sell . . . copies of the accompaniment tracks via pre-loaded [computer] hard drives, USB drives, CD-R's, or the Internet." (Id. at ¶ 39).

Further, Plaintiff alleges that "[t]he copying, sharing, distribution, and selling of media-shifted copies is not accompanied by the payment of any royalty to Slep-Tone, nor authorized by any license agreement." (Id. at ¶ 43). Notwithstanding, Slep-Tone investigators allegedly "observed each of the Defendants possessing, using, or authorizing or benefitting from unauthorized counterfeit copies of at least one work bearing the Sound Choice Marks." (Id. at ¶ 61).

Slep-Tone filed this case on August 10, 2011 in which it asserts three causes of action against upwards of thirty defendants. (CM/ECF. No. 1). Plaintiff specifically asserts the following claims: (1) "trademark infringement involving counterfeiting"; (2) violation of the New Jersey Trademark Counterfeiting Act, N.J.S.A. 56:3-13.16, et seq.; (3) unfair competition in violation of 15 U.S.C. § 1125(a). (Id. at 19-22).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." Twombly at 545 (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (2007). Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 557 (2007)).

## III. DISCUSSION

As noted above, Plaintiff brings the following claims: (1) "trademark infringement

involving counterfeiting"[5]; (2) violation of the New Jersey Trademark Counterfeiting Act, N.J.S.A. 56:3-13.16, et seq.; and (3) unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

The definition of trademark infringement is the "use of a mark so similar to that of a prior user as to be 'likely to cause confusion, or to cause mistake, or to deceive." Kos Pharms. Inc. v. Andrx Corp., 369 F.3d 700, 711 (3d Cir. 2004); 15 U.S.C. § 1114(1). As explained by the Third Circuit, the Lanham Act as amended in 1962 "broadened the scope of trademark protection beyond the traditional source-of-origin confusion," such that it additionally "covers the use of trademarks which are likely to cause confusion, mistake, or deception *of any kind*, not merely of purchasers nor simply as to source of origin." Id. (citations omitted) (emphasis in original).

"[T]he elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory authority and common law . . . ." J&J Snack Foods Corp. v. The Earthgrains Co., 220 F.Supp.2d 358, 374 (D.N.J. 2002); Primepoint, LLC v. PrimePay, Inc., 545 F.Supp.2d 426, 432 (D.N.J. 2008). Thus, Plaintiff must plead that "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000); Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 472 (3d Cir. 1994).

First, Defendants attack neither the validity nor ownership of the Sound Choice Marks. As to the likelihood of confusion, Defendants submit that the procurement of unauthorized

---

[5] See §32(1) of the Lanham Act, 15 U.S.C. § 15 U.S.C. 1114(1).

copies "does not support a cause of action for trademark infringement because the display of the Sound Choice Marks with an illegally obtained Slep-Tone music track could not cause consumer confusion because the marks were affixed to the music by Slep-Tone and would be displayed along actual Slep-Tone music." (Def. Br. 12-13).[6] Defendants continue, "[t]he alleged use of the Sound Choice Marks could not cause any confusion between the tracks allegedly played by the Defendants and the tracks recorded by Slep-Tone; therefore, the facts alleged do not support a cause of action for trademark infringement." (Def. Br. 13).

Taken to its logical conclusion, this argument seems to suggest that the closer an unauthorized copy or counterfeit product is to the original, the less chance of a likelihood of confusion. However, this proposition is counter to Third Circuit precedent and trademark principles. Rather, "[t]he single most important factor in determining likelihood of confusion is mark similarity. Marks are confusingly similar 'if ordinary consumers would likely conclude that the two products share a common source, affiliation, connection or sponsorship." Sabinsa Corp. v. Creative Compounds, LLC, 609 F.3d 175, 183 (3d Cir. 2010) (citations omitted).

Defendants additionally argue that no false statement is alleged and thus Plaintiff's Complaint is deficient. (Def. Br. 2). They continue as follows: "In fact, Slep-Tone's sole allegation is that Defendants 'repeatedly displayed the Sound Choice Marks without right or license' and does not allege that the tracks were not associated with Slep-Tone products, instead only calling into question the means by which Defendants procured the accused products, without factually pleading that such means was legal or illegal." (Def. Br., 2-3).

---

[6] In this regard, Defendants' reliance on caselaw which stands for the proposition that the resale of genuine goods is inapposite where, as here, the goods are not alleged to be genuine. (Def Br., 12).

Page 6 of 7

Notwithstanding this proposed reading of the Complaint, Plaintiff does allege that the marks used were not associated with Slep-Tone products insofar as those products were unauthorized copies.

Finally, despite Defendants' arguments to the contrary, Plaintiff makes specific allegations regarding each of the Defendants who bring the instant motion and that investigators observed the use of counterfeit copies of Plaintiff's accompaniment tracks and display of Sound Choice Marks without right or license. (Pl. Opp'n, 4-6, Compl. ¶¶ 5-30). Thus, the Court finds that Plaintiff adequately states a plausible right to relief. See Slep-Tone Entertainment Corp. v. Keats Kaoroke, Civ No. 11-4657, 2011 WL 6057979 (S.D.N.Y., Dec. 2, 2011).[7]

## IV. CONCLUSION

For the above detailed reasons, Plaintiff's Complaint sufficiently articulates a claim upon which relief may be granted. Therefore, Defendants' motion to dismiss under Federal Civil Rule 12(b)(6) is DENIED.

An appropriate Order accompanies this Opinion.

DATE: March 8, 2012

Jose L. Linares
United States District Judge

---

[7] The Court additionally notes that while Defendants reference cases from other districts in their Reply that deal with the issue of joinder (Def. Reply Br., 7), they do not attempt to distinguish the present matter from that decided by the Southern District of New York involving a Fed. R. Civ. P. 12(b)(6) challenge. In any event, the Court need not reach the issue of joinder as it is beyond the scope of the instant motion. Defendants also state that "there are dozens of cases involving Plaintiff pending across the country including cases that dismissed defendants in response to a [m]otion to [d]ismiss, disposed of defendants on [s]ummary [j]udgment, and dismissed defendants for various other reasons." (Def. Reply Br., 7). However, they do not adequately analogize the present matter to any of those cases nor provide so much as a citation.